Good afternoon. We're on case number 413-0378, Tammaca Pickett v. City of Champaign for the appellant attorney Vivian Tarver-Vernada. And are you doing the whole argument or is Miss Taylor going to argue too? Okay. And for the appellee, Mr. Rosenberg, Samuel Rosenberg? Yes, ma'am. And you're for the City of Champaign? That's correct, ma'am. And Mr. Watson, John Watson, you're for Carle? Correct. And will you both be sharing your time? What we've agreed to is that the City will have 12 minutes and Carle will have 8 minutes. Alright, and did you let the clerk know? Yes, ma'am. Perfect, great. Alright, Ms. Vernado, you may proceed. Good afternoon, Your Honor. May it please the Court. Your Honor, we're here today to answer two simple questions. The first one is whether the injuries alleged by the plaintiff or rose out of or was causally connected to patient care. And if they were, then 101-D of the Court Immunity Act would be invoked, which would stand for a two-year statute of limitations. The second question before this Honorable Court is whether, given the defects articulated by the lower court, the factual defects articulated by the lower court, with regard to the plaintiff's complaint, whether the plaintiff should have been given an opportunity to amend his complaint to cure whatever defects the court perceived existed. Did you make a motion to amend your complaint to expand upon the claims regarding the exception under the statute of limitations to show that these were claims arising out of patient care? We made a motion to reconsider and we made an oral motion to ask the Court to, for leave to amend the complaint to cure the defects that were perceived by the Court. You made an oral motion? Yes, Your Honor. The Court ruled, and once the Court ruled, we asked the Court, because at that time it was the plaintiff's position that it was a 2619 motion brought with respect to the City of Champaign. The City of Champaign was arguing that the statute of limitations had expired. At that point, listening to the opinion of the Court, it was the plaintiff's position that the Court did not rule specifically to the arguments addressed in the City's motion, but rather what the Court did was make a ruling based on 2615, found the complaint was factually and legally deficient, stated the plaintiff failed to state a cause of action, and because the plaintiff had not filed a 2622 report, then the Court said apparently 101A applies, without addressing whether the injuries sustained by the plaintiff, plaintiffs receiving rolls out of patient care. So with that understanding, immediately the plaintiff asked the Court for leave to amend to cure the defects that were perceived by the Court, and the Court said file a motion to reconsider its ruling. The Court directed the plaintiff to file a motion to reconsider its ruling, and the plaintiff did that on February 5th. What about a motion to amend your complaint? The Court said no, had already said no. The Court had already said no. In response to your oral request? Yes, Your Honor. So the Court said, I'm not going to give you an opportunity to amend? The Court said no. I asked for leave to amend. The Court said no. And then I said, would the Court reconsider its ruling? He said, file a motion, which the plaintiff did on February 5th, and the motion was denied. Now, Counsel, when did the motion for leave to conduct additional discovery come into play? With regard to discovery, the motion came into play pertaining to Carlisle, not the City of Champaign. Because the City of Champaign was alleging a statute of limitations issue, there was no need for discovery on that issue. Plaintiff was clear that the injuries sustained by the decedent arose out of or was causally connected to patient care, and there was no discovery that would have revealed actually whether patient care existed or not, because the facts of the occurrence were the facts of the occurrence. So going back to my question, it's your position that you believe you could amend the complaint to bring it within the rising out of patient care provision of the statute of limitations, so that it would be the two-year statute of limitations that should apply? Absolutely, Your Honor. And that's what the trial court denied you the opportunity to do? Yes, Your Honor. Plaintiff asked for leave to cure any defects perceived by the court. The court was very specific with regard to the defects that the court perceived plaintiff's complaint had. So plaintiff asked for leave to cure any and all defects perceived by the court. When did you file your first amended complaint to include the City of Champaign? October 29, 2013. The initial injury sustained by the decedent occurred on July 15, 2012, and he died July 25, 2012. So the hearing on the City's motion to dismiss under 2619 occurred when? The hearing occurred January 31, 2013. I think I misspoke when I said the complaint was filed in 2013. I apologize if I did. The complaint was filed July of 2012, and the amended complaint identifying the City of Chicago for the first time was filed October 29, 2012. So October 2012, the City of Champaign is identified as a defendant? Yes, Your Honor. Okay, and then the City moves to dismiss, and you have a hearing on that motion. When was it? January 31, 2013. So it was four months later? Yes, Your Honor. And at that hearing, the court says it's read off all this stuff and grants the motion, and that's when you ask for leave to amend, and it's denied? Yes, Your Honor. And did you explain that you wanted leave to amend to include other factual vermin to bring you within the rising out of patient care language? What I asked the court is for leave to amend to cure all defects, and certainly the rising out of language would have been one of those defects. What was the City's response to your request to amend? I made an oral motion. In the City, I believe, Your Honor, the court just said no. No one had a chance to even pose an objection, not to say that they would not have had an objection, of course, but the court just simply said no. The court ruled before even waiting for them to say they object? Right. The court just said no, and we're in recess. By the way, dealing with the Carroll Hospital matter, I'm not sure I understand what's going on here. I think that is big to do about the Carroll Foundation Hospital or the Carroll Foundation Hospital. If the plaintiff prevails and gets a judgment on the grounds of medical malpractice, let's say, you're only going to be able to get one of those, aren't you? I mean, are you claiming that there are two separate entities and picking a figure out of the air? There's a $300,000 judgment against Carroll Foundation Hospital for medical malpractice and, in addition, a $300,000 judgment for medical malpractice against the Carroll Foundation Hospital? No, Your Honor. So what's this all about? When plaintiff filed her complaint at law, despite the diligence of plaintiff's investigation, plaintiff could not obtain information that was only in the purview of Carlisle, the Carlisle Foundation Hospital. Carl. Carl, I'm sorry. Or the Carl Foundation Hospital. Plaintiff did not have that information. Of course, plaintiff checked the Secretary of State's website and identified the Carl Foundation Hospital. Well, at this point in the proceedings, though, everyone seems to say we're the Carroll Foundation Hospital and we're the defendants and there is no such entity as Carroll Foundation Hospital. At the point of plaintiff filing her complaint, plaintiff had no knowledge of that. But why is it being litigated at this point and even raised on appeal? Why does it matter? It mattered, Your Honor, because the concern that plaintiff had is that it did not want Carlisle Foundation Hospital or the Carl Foundation Hospital to come in and say, you sued the wrong entity, there's no liability. They had not answered the complaint. They had not assumed responsibility at that juncture. How about now? Well, now they have. So is it any longer an issue that we need to address? We do not at this juncture. But plaintiff didn't have that information, Your Honor. But so everyone's happy, it's the Carl Foundation Hospital. You know who they are, they know who they are. That's not the issue anymore, I think. Correct. Plaintiff will concede that, Your Honor. Okay. So the only other question is the Carl auxiliary? Yes, Your Honor. And what's that all about? Plaintiff concedes that the points made by Carl auxiliary are correct. It was an omission of plaintiff to add them to the notice of appeal, which went unnoticed. It did. So plaintiff concedes that Carl auxiliary's points are well taken. But in any event, if Carl committed malpractice, you're only going to get one judgment, and it would be against the Carl Foundation Hospital. Well, at the time, we had no way of knowing the relationships, and that's why we... I understand. But at this point, the Carl auxiliary issue isn't an issue anymore, is it? You are correct, Your Honor. We've conceded. Okay. Go ahead. I asked you a lot of questions. You've answered them. Thank you. Okay. Basically, this case involves a 13-year-old boy who died as a result of injuries arising out of patient care, which it is alleged that medical malpractice, negligence, and willful and wanton conduct led to those injuries. With regards to the underlying facts, on July 15th, the mother of the then 13-year-old boy called 911 from her home. The agency for the city of Champaign, Metropolitan Computer Aided Dispatch, received the call, processed the call, and dispatched an ambulance. When the agency dispatched the ambulance, the ambulance presumably was en route. Prior to the ambulance arriving at the home, the child's condition began to deteriorate. The mother then called back and received the agency again. The mother was given cardiopulmonary resuscitation instructions over the phone, which the mother attempted. At that point, a police officer who heard the exchange over the radio understood that no ambulance had yet arrived. We do not know today the reason for the delay of the ambulance had not arrived. The police officer showed up and initiated cardiopulmonary resuscitation himself. He requested, through MedCat, additional help to arrive at the home. Subsequent thereto, the ambulance arrived. When the ambulance arrived, they assessed the child, they established intravenous access, they administered intravenous medication, they attempted to consider oral airway, they attempted to intubate the child, but the condition continued to deteriorate. The child sustained what is called ventricular fibrillation. Ventricular fibrillation is a cardiac condition where the electrical impulses of the heart basically go into chaos and render the heart ineffective as a pump. The paramedics attempted to stabilize that through defibrillation and at some point transfer the child to the Carlisle Foundation Hospital, as I know it to be now, where the child was admitted, treated, and subsequently died 10 days later. Plaintiff alleges that the injuries sustained by the deceitful arose out of or were at a very minimum causally connected to patient care. As a result, the 101B of the Tort Immunity Act is invoked. The 101A of the Tort Immunity Act generally says that when a public entity is involved, the statute of limitations expires in one year. However, in 2003, in an effort to create equality and to create equity, the legislature decided that it shouldn't matter whether an individual receives care from a public institution or a private entity. The same statute of limitations should apply. They should not be penalized because they received care from one entity as opposed to the other. In that year, the legislature enacted 101B, which basically stands on the proposition that for any action where the injuries arise out of patient care, then the two-year statute of limitations applies. In 2008, the Illinois Supreme Court, in interpreting the language arising out of, as it pertains to medical malpractice cases 13 to 12, simply said that arising out of is construed to be any injury that has its origin in or is causally connected to patient care. This honorable court, specifically Justice Pope, wrote an opinion in 2009 in Coffman v. Jersey Community Hospital. Jersey Community Hospital was a public entity. In that opinion, this court adopted the reasoning of the Illinois Supreme Court when it articulated its opinion of arising out of as pertaining to 13 to 12. It adopted it as pertaining to 101B and the language of arising out of. Plaintiff stands and believes that it is reasonable to construe that the injuries sustained by the decedent arose out of or minimally were related to or causally connected to or had its origin in patient care. And as a result, the two-year statute of limitations is invoked. And when plaintiff filed her amended complaint on October 29, 2013, it was within the two-year statutory period, and therefore the statute of limitation had not arised, had not expired. And for those reasons, plaintiff asked this honorable court to vacate the order entered by the lower court and allow plaintiff to return, amend his complaint, and allow the case to proceed on its merits. Well, Counsel, in your amended complaint, do you have any allegations that MedCAD, as an agent of the city, engaged in any form of patient care to trigger this two-year statute of limitations? Sure. What allegations do you have? We have the allegations that there was a delay in treatment, that they had a conscious disregard to the life of the decedent. And where that came from is once MedCAD was aware that the patient had to dispatch a second ambulance. And so in that regard, it's plaintiff's position that delaying care led to, or certainly was causally connected to, the end result of the child experience. To specifically answer your question, Justice White, yes, in the allegations, plaintiff discussed the delay in emergency treatment and the conscious disregard that it believed, what she believes was exhibited on behalf of MedCAD. Any other questions from the panel? Thank you. I reserve time for one more. I'm sorry, I do have one other question. Yes, Your Honor. The other issue is your failure to file with respect to the two-year statute of limitations being implicated, the certificate that's required. What about that? Yes, Your Honor. The court noted that. The court noted that plaintiff failed that threshold requirement of filing a 262 report. Plaintiff acknowledges that a 262 report is necessary for malpractice. That omission, though, did not warrant a dismissal with prejudice. Even if the court was correct in dismissing plaintiff's complaint for all the perceived defects that the court articulated, certainly a 262 is something that can be cured. So you're conceding that that should have been filed and that that was a basis to dismiss, but you're just saying it should have been with leave to amend. I'm conceding that the court found it necessary that plaintiff file the 262 too. And you're conceding that it is necessary? Yes, it is necessary. If given an opportunity to amend, you believe that in addition to amending your complaint, you could also provide the court with the necessary 2622 affidavit? There is no question. Okay. Because I've spoken with my consultant. There is no question about that. Are there any other questions from the court? We'll hear from you again on rebuttal. Thank you very much. Mr. Rosenberg. Thank you, Your Honor. If it may please the court, counsel. Good afternoon, Your Honor. METCAD, or the Metropolitan Computer-Aided Dispatch Center, is located in Urbana and provides coordination for emergency management personnel to be dispatched throughout the Champaign-Urbana and Champaign County area. The City of Champaign is involved in the operation of METCAD and through METCAD is in the business of dispatching police, firemen, and emergency management personnel. It is not in the business of providing medical care. As counsel indicated, this case is on appeal today regarding a 2619 motion to dismiss due to the complaint being filed beyond the one-year statute of limitations as indicated in the Tort Immunity Act. This case was dismissed with prejudice on January 31, 2013, following the filing of an amended complaint on October 29, 2012, at which time METCAD and the City of Champaign were named. Actually, the issue from which the clock began to run for the statute of limitations was July 15, 2001. Well, counsel, as plaintiff's counsel just conceded, she is not challenging the dismissal at this point. The primary issue regarding the city is why was it dismissed with prejudice? Why shouldn't she have been given the opportunity on behalf of the plaintiff to file an amended complaint to see whether or not she could allege matters sufficient to raise a question of fact regarding the application of the statute of limitations and whether this was treatment arising out of patient care? Of course, Your Honor. The City of Champaign believes that the dismissal with prejudice was appropriate because this allegation of medical care being provided does not come up until actually the appeal. The allegations put forward in the complaint do not articulate any medical care. The four allegations that are put forward by the plaintiff are... Why does that matter? I don't understand why that's responsive. That's the purpose of an amendment. Yeah. If she says, okay, judge, my complaint is deficient, says the court, I want an opportunity to amend it to make it... This is, by the way, four months after she filed to include the city as a defendant. We're not talking four years. Why should... You know the law on dismissals with prejudice. The court decides no set of facts can be presented, et cetera. Why is this a dismissal with prejudice? Your Honor, the plaintiff had sufficient time and opportunity to add other parties, including other municipalities such as the City of Rantoul, when they filed the complaint the first time. Plaintiff's counsel has a responsibility of due diligence to look into the case, to look into the facts of the situation, and file it when necessary. Now, with the situation alleging medical care, as was pointed out by Justice White, there was no 2622 certificate filed. Okay. That was a factor, but not the only means. And, as you know, counsel, there's been a lot of case law on the subject where I think this court has said a couple of times, you ultimately have to do this, but if it's deficient or absent, we'll give you an opportunity to correct this deficiency. Essentially, that's what the plaintiff says, we think we can do it. For all practical purposes, we have a complaint against the city that's four months old and dismissed with prejudice on the first hearing. That seems to me to be kind of unprecedented. But what is frustrating from the City of Champaign's perspective, Your Honor, is the fact that they are now coming on the appellate level and stating that they were claiming to allege patient care the entire time. And that was not the case. No, we don't know. I mean, I guess the argument you're presenting is the city saying, well, there are deficient complaints and deficient complaints. This one was so deficient, she's not to be given an opportunity to amend. Correct. Where does that appear? It appears, Your Honor, we're looking at the court. I mean, it's a standard. I don't understand. And it seems to me that the standard is when a plaintiff is asked to leave to amend the complaint to address deficiencies, which the defendant has correctly pointed out, the court, unless there's a compelling reason why not or we're dealing with massive delays or whatever, should say, okay, you've got 30 days in which to file an amended complaint, let's take a look or whatever. I'm just trying to recall precedent for dismissing with prejudice at the first hearing four months after a complaint's been filed. Counsel, what about the factors in the Loyola Academy case that guide us when we're looking at whether or not an amendment is appropriate? Why doesn't that apply here? Your Honor. What prejudice would the city suffer? Sure. In this situation, we're dealing with a case where, as it was initially filed, it looked as though it was an initial negligence action. And then upon being dismissed with prejudice, they decide that it's going to be a medical malpractice action because of the fact that now there's a two-year statute of limitations that they can get under under the B section of the tort committee. To allow them to refile after not pleading any type of patient care the first time around would be to frustrate the purposes of the initial tort committee. MedCat and the city of Champaign are not in the business of providing medical care. And I think the plaintiffs recognize that, which is why they did not plead it to begin with. The cases that the plaintiffs cite time and again are ones in which the defendants are physicians, hospitals, nurses. They are not ones such as where the city is providing ambulance services. Excuse me, but counsel, with all due respect, we're not talking about whether they win on the merits. We're talking about do they get their day in court, do they get the right to amend based on the case law regarding when amendments are appropriate, when a dismissal with prejudice is appropriate. And, Your Honor, my argument would be, and the city of Champaign's argument, would be that they did have their day in court, which is why they were able to add the city of Grantoul initially, and that they did not do their due diligence in recognizing and researching the city of Champaign should have been added earlier in the pleadings process. And that if they are going to come back and say, now, well, we thought we were under the two-year statute of limitations because of the medical care alleged, I'd like to see where in the complaint that is stated. The four elements that are put forward by the plaintiff in their complaint against the city of Champaign, stating that there was a breach of their duty by failing to timely respond to the medical emergency of the deceased. The city of Champaign breached its duty by failing to follow proper protocol. The Champaign breached its duty by acting with a conscious disregard for life, and that Champaign was careless and reckless. Now to come back and say that that is alleged medical care, and therefore the two-year statute should apply, is inappropriate. We are not alleging that there is a defect in the complaint that was put forward initially, besides the fact that it was filed late. If plaintiffs were able to put forward a complaint initially that was going to be able to name other parties, name Carl, name the city of Grantoul, then they should have been able to do so with regards to the city of Champaign and Metcalfe as well. By the way, and for what it's worth, Mr. Rosenberg, I know from the record you weren't counsel at the trial level, nor were you the attorney who wrote the brief. But the court was not well served by what happened here, and I'm referring specifically to the argument the plaintiff has made, and the plaintiff is correct, about 2619 motions. 269 motion, as this court has discussed repeatedly and recently, and Winters v. Wengler pointed out as well, is a yes-but motion. That means you're saying, yes, for purposes of the motion, we concede you stated a cause of action plaintiff, but you lose for some affirmative matter, such as the statute of limitations is run. That was not argued clearly to Judge Ford, and I note on page 11 of the brief, here's this statement. No cause of action was alleged in the First Amendment complaint. It could proceed forward against the city because, as alleged, the amended complaint was not timely filed. That's a misstatement of the law. A not-timely-filed complaint is a 2619 affirmative matter where you are conceding that they have stated a cause of action for purposes of the motion, and you're challenging it on the grounds that the statute of limitations is run. It is not correct to say no cause of action was alleged. I noted that argument was presented to the trial judge, and the trial judge may have been misled by it, and it was unfortunate. I want to point it out, not only is the Winters v. Wengler court decision on point, but we have at least two or three others within the last year, Jimmy John's case, Howell v. Ockwill, and some others, which have emphasized this point, and I hope that when this case comes back, Mr. Kerchak, in as good a form as yours, would not be using this incorrect terminology. Thank you, Your Honor. Thank you, Justice. Thank you, counsel. Mr. Watson. May it please the court. I think counsel had conceded all positions with regard to my arguments. Yes. It's always good to see you, counsel, but what's the issue? If you have any questions, I'll certainly entertain those, but otherwise... Everyone agrees that if there's liability, it's the Carle Foundation Hospital, not Carle Foundation Hospital or Carle Auxiliary.  Thank you, Your Honor. Pleasant to see you. Any rebuttal, counsel? Good afternoon again, Your Honor. With regard to plaintiff's position, just very quickly... You have to speak up a little bit. With regard to plaintiff's position, just very quickly, all plaintiff is asking is to have her day in court, to allow her to amend the complaint and let the case proceed on its merits. Plaintiff, of course, has a deceased child, and all we're asking is an opportunity to amend the complaints to cure whatever defects the court perceives that there are in strict compliance with the court-perceived defects and have the case heard on its merits. Thank you very much, Your Honor. Thank you, counsel. Court will be in recess until the next case.